1    UNITED STATES DISTRICT COURT

2    DISTRICT OF NEVADA

3

4    ANTOINE GILL,                                    Case No. 2:22-cv-01199-CDS-NJK

5                                      Plaintiff      SCREENING ORDER ON
                                                      FIRST AMENDED COMPLAINT
6        v.
                                                      [ECF No. 8]
7    LAS VEGAS METROPOLITAN POLICE
     DEPARTMENT, *et al.*,

8
                                      Defendants
9

10   _____

11            On November 4, 2022, this Court screened *pro se* Plaintiff Antoine Gill's civil rights

12   complaint under 28 U.S.C. § 1915A. ECF No. 6. In its screening order, the Court granted Plaintiff

13   leave to proceed *in forma pauperis* and dismissed his complaint in its entirety with leave to amend.

14   *Id.* at 7-8. Plaintiff subsequently filed a first amended complaint ("FAC"). ECF No. 8. The Court

15   now screens the FAC under 28 U.S.C. § 1915A.

16   **I.      SCREENING STANDARD**

17            Federal courts must conduct a preliminary screening in any case in which an

18   incarcerated person seeks redress from a governmental entity or officer or employee of a

19   governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any

20   cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon

21   which relief may be granted, or seek monetary relief from a defendant who is immune from such

22   relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v.*

23   *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a

24   plaintiff must allege two essential elements: (1) the violation of a right secured by the

25   Constitution or laws of the United States; and (2) that the alleged violation was committed by a

26   person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

27            In addition to the screening requirements under § 1915A, under the Prison Litigation

28   Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the

allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *Id.* at 723-24. In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

1    Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua*

2 *sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims

3 based on legal conclusions that are untenable—like claims against defendants who are immune

4 from suit or claims of infringement of a legal interest that clearly does not exist—as well as

5 claims based on fanciful factual allegations like fantastic or delusional scenarios. *Neitzke v.*

6 *Williams*, 490 U.S. 319, 327–28 (1989).

7 **II.     SCREENING OF FAC**

8    In the FAC, Plaintiff sues the Las Vegas Metropolitan Police Department ("LVMPD"),

9 S.E.R.T. Officer Shipton, Module Officer Shea, and John Doe Classification Officer for events

10 that took place while he was a pretrial detainee at Clark County Detention Center ("CCDC").

11 ECF No. 8 at 1-2. Plaintiff brings three claims and seeks monetary and injunctive relief. *Id.* at 3-6.

12    The FAC alleges the following. Following Plaintiff's arrival at CCDC, John Doe

13 Classification Officer sent him to the facility's North Valley Complex. *Id.* at 2. There, Officer

14 Shipton assigned Plaintiff to a top bunk in Pod 1F. *Id.* at 2-3. Top bunks at the North Valley

15 Complex posed a "threat to [Plaintiff's] safety" because they were not equipped with "safety

16 railing to prevent roll off." *Id.* at 4. Every bottom bunk, by contrast, had "rail[s] to prevent roll

17 off." *Id.* at 5. If Plaintiff had refused to sleep on the top bunk, LVMPD policy would have required

18 that he be sent to "the hole" for "refusing housing." *Id.* at 3.

19    While Plaintiff was sleeping, he rolled off the top bunk, hit his head on the "writing

20 desk," and fell onto the concrete floor. *Id.* at 2. The fall caused Plaintiff to lose consciousness, and

21 he fractured his left tibia. *Id.* When he came to, Plaintiff began "yelling due to [the] pain" caused

22 by the fracture. *Id.* Officer Shea called for help, and the sergeant on duty responded with Nurse

23 Elizabeth, Nurse Anthony, Officer Elizondo, and two other nurses.[1] *Id.* Plaintiff was ultimately

24 sent to "medical," where his fractured left tibia was "confirmed" two days later. *Id.*

25    According to Plaintiff, the LVMPD is "strictly liable" for his injury because he was "in the

26 custody of the LVMPD." *Id.* at 5. Likewise, Shea is alleged to be "strictly liable" for Plaintiff's

27

28

---

[1] Plaintiff does not name the sergeant, Elizabeth, Anthony, Elizondo, or the other two nurses as Defendants in this action, and the Court does not construe the FAC as asserting claims against them.

1  injury because he was "on duty at [the] time of [Plaintiff's] roll off." *Id.* Plaintiff further asserts

2  that "every officer of the LVMPD is strictly liable for [his] injury." *Id.*

3      Based on these allegations, Plaintiff brings a Fourteenth Amendment conditions-of-

4  confinement claim. *Id.* at 3-5. Because he sues the LVMPD, the Court liberally construes the FAC

5  as also asserting a municipal liability claim.

6      **A.     Conditions of Confinement**

7      A pretrial detainee's claims challenging unconstitutional conditions of confinement fall

8  under the Fourteenth Amendment's Due Process Clause. *See Gordon v. Cnty. of Orange*, 888 F.3d

9  1118, 1124 & n.2 (9th Cir. 2018). The Court evaluates Fourteenth Amendment conditions-of-

10  confinement claims under the objective deliberate indifference standard. *See id.* To establish

11  unconstitutional conditions of confinement, a plaintiff must prove that "(i) the defendant made

12  an intentional decision with respect to the conditions under which the plaintiff was confined;

13  (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the

14  defendant did not take reasonable available measures to abate that risk, even though a

15  reasonable official in the circumstances would have appreciated the high degree of risk

16  involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking

17  such measures, the defendant caused the plaintiff's injuries." *Id.* at 1125; *see also Castro v. Cnty. of Los*

18  *Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). The third element requires the defendant's conduct to

19  be "objectively unreasonable," a test that turns on the facts and circumstances of each case.

20  *Gordon*, 888 F.3d at 1125. A plaintiff must "prove more than negligence but less than subjective

21  intent—something akin to reckless disregard." *Id.*

22      When evaluating the objective reasonableness of the defendant's conduct, a pretrial

23  detainee may show that "the challenged governmental action is not rationally related to a

24  legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v.*

25  *Hendrickson*, 576 U.S. 389, 397-98 (2015).

26      Plaintiff fails to state a colorable conditions-of-confinement claim. He alleges that,

27  following his arrival at *CCDC*, Shipton assigned him to a top bunk with no safety rails, and that

28  he subsequently injured himself when he fell off the bunk. ECF No. 8 at 2-3. As the Court

explained in its prior screening order, these allegations are insufficient to state a constitutional

violation. ECF No. 6 at 4–5. First, the absence of safety rails on a top bunk does not expose

inmates to a "substantial risk of suffering serious harm." *Gordon*, 888 F.3d at 1125; *see also Jefferson*

*v. Dep't of Pub. Safety & Corr.*, No. 10-cv-1317, 2013 WL 3776224, at *3 (W.D. La. July 16, 2013)

("[T]he lack of guard rails on a top bunk does not create a substantial risk of serious harm.");

*Walker v. Walsh*, No. 11-cv-1750, 2012 WL 314883, at *5 (M.D. Pa. Feb. 1, 2012) ("[F]ailing to install

safety rails on an upper bunk of a set of bunk beds that is to be exclusively utilized by adults

does not constitute a condition which would pose an unreasonable risk of future injury."

(internal quotation marks and citation omitted)).

      Second, Plaintiff fails to allege that, in assigning him to a top bunk with no railing,

Defendants acted with "something akin to reckless disregard." *Gordon*, 888 F.3d at 1125. Like the

original complaint, the FAC does not allege that Plaintiff suffered from a condition that made

him particularly likely to fall off a top bunk. For example, Plaintiff does not allege that he

suffered from seizures, a sleep disorder, or balance issues. And even if he had alleged such facts,

Plaintiff does not claim that Defendants knew (or should have known) he had any condition

that made him uniquely susceptible to falling off a bed. Instead, Plaintiff appears to contend that

Defendants should be held "strictly liable" for his injuries. ECF No. 8 at 5. But the Fourteenth

Amendment does not impose strict liability on jail officials in conditions-of-confinement cases.

Rather, to state a Fourteenth Amendment claim, a plaintiff must allege "more than negligence

but less than subjective intent—something akin to reckless disregard." *Gordon*, 888 F.3d at 1125.

Plaintiff has not done so here. Accordingly, the Court dismisses the conditions-of-confinement

claim.[2]

      **B.**     **Municipal Liability**

      "The LVMPD is a political subdivision of the state and may sue or be sued in its own

name." *Williams v. Las Vegas Metro. Police Dep't*, No. 16-cv-3020, 2019 WL 346400, at *5 (D. Nev. Jan.

---

[2] Under Plaintiff's theory of liability, the Fourteenth Amendment would require jail officials to install safety railing on all of the top bunks in their facilities. The Court is not aware of any authority supporting such an expansive reading of that constitutional provision.

25, 2019) (citing Nev. Rev. Stat. § 280.280(4)). "To state a colorable claim against the LVMPD, a plaintiff must allege a theory of municipal liability." *Id.*

A municipality may be found liable under 42 U.S.C. § 1983 only if the municipality itself causes the violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)). To state a claim for municipal liability, a plaintiff must allege that he suffered a constitutional deprivation that was the product of a policy or custom of the local government unit. *Id.* "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipalities are not vicariously liable under § 1983 for their employees' actions. *Id.* at 60.

A policy has been defined as "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *Monell*, 436 U.S. at 690); *see also Waggy v. Spokane Cty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). The weight of authority has established that a "policy can be one of action or inaction" within the meaning of *Monell*. *Waggy*, 594 F.3d at 713 (citing *City of Canton*, 489 U.S. at 388). "Both types of claims require that the plaintiff prove a constitutional violation." *Id.* (citing 42 U.S.C. § 1983).

Plaintiff fails to state a colorable municipal liability claim. Like the original complaint, the FAC does not adequately allege an underlying constitutional violation—one of the elements of a municipal liability claim. *See Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims . . . require a plaintiff to show an underlying constitutional violation."); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights. Here, the municipal defendants cannot be held liable because no constitutional violation occurred."). Thus, because Plaintiff fails to state a constitutional violation, his municipal liability claim necessarily fails.

C.    **Dismissal with Prejudice**

The Court's prior screening order informed Plaintiff of the deficiencies in his allegations and gave him an opportunity to amend to address those deficiencies. ECF No. 6 at 4-6. Plaintiff's FAC suffers from the same defects as the original complaint. Because Plaintiff has already had one opportunity to cure the deficiencies in his allegations, further leave to amend is not warranted, and the Court dismisses the FAC with prejudice. *See Arlow v. Cal. Dep't of Corr.*, 168 F. App'x 249, 250 (9th Cir. 2006) ("Because the district court had already allowed Arlow an opportunity to cure the deficiencies in his original complaint and had provided specific instructions on appropriate pleading, we cannot say that the district court abused its discretion by dismissing Arlow's amended complaint without granting leave to amend."). Dismissal with prejudice is also appropriate because it does not appear that the pleading deficiencies could "possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**III.    CONCLUSION**

It is therefore ordered that the operative complaint is the FAC (ECF No. 8), and that the Clerk of the Court send Plaintiff a courtesy copy of it.

It is further ordered that the FAC is dismissed in its entirety with prejudice, as amendment would be futile.

It is further ordered that the Court certifies that any *in forma pauperis* appeal from this order would **not** be taken "in good faith" under 28 U.S.C. § 1915(a)(3).

It is further ordered that the Clerk of the Court close the case and enter judgment accordingly.

DATED: December 14, 2022

_____
UNITED STATES DISTRICT JUDGE